GRIFFIN, J.
 

 Leighdon Henry [“Henry”]
 
 pro se
 
 appeals his judgment and sentence for three counts of sexual battery with a deadly weapon or physical force, one count of kidnapping with intent to commit a felony (with a firearm), two counts of robbery, one count of carjacking, one count of burglary of a dwelling, and one count of possession of twenty grams or less of cannabis. We find no error and affirm without comment on all issues except one. Henry contends that the sentences he received violate the constitutional prohibition against cruel and unusual punishment in light of the United States Supreme Court’s decision in
 
 Graham v. Florida,
 
 — U.S. -, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). At the time of his offenses, Henry was seventeen years old.
 

 Henry’s convictions and sentences arose from the following facts: The victim entered her apartment and found her sliding door had been opened. She saw a stranger, Henry, standing in the hallway. She tried to run, but he grabbed her from behind, causing her to fall and injure her face. Henry put his hand over her mouth and told her to be quiet. He then showed her a gun and told her to get up. He took her into her bedroom, showed her the gun and slapped her face. He licked her genitals, penetrated her vagina and anus and put his penis in her mouth. He then made her shower. Henry took food from the victim’s kitchen and forced her to take him to an ATM machine and withdraw money. The victim was able to get away after they left the ATM.
 

 At the time of his sentencing on October 17, 2008, the trial court found that Henry qualified as a sexual predator, and sentenced him as follows: Counts I, II, & III (sexual battery with a deadly weapon or physical force) — natural life on each count, Count V (kidnapping with intent to commit a felony) — thirty years, Count VI (robber-fifteen years, Count VII (carjacking) — thirty years, Count VIII (robbery) fifteen years, Count IX (burglary of a dwelling) — fifteen years, and Count X (possession of 20 grams or less of cannabis (marijuana) — 364 days in jail with credit for 364 time served. Counts I, II, III, V, and VI were ordered to run concurrently with each other; Counts VII, VIII, and IX were ordered to run consecutively with each other as well as consecutively to Counts I, II, III, V, and VI; and Count X was ordered to run concurrently to Count I. Thereafter, on October 20, 2008, the trial court entered an order, nunc pro tunc, correcting sentencing with respect to
 
 *1086
 
 Count V, in which it directed that no minimum mandatory be imposed, pursuant to the jury verdict.
 

 Henry filed a notice of appeal on October 24, 2008. Thereafter, Henry filed a rule 3.800(b) motion, and an amended rule 3.800(b) motion, to correct sentencing error, in which he argued that the imposition of life sentences constituted cruel and unusual punishment under
 
 Graham.
 
 After conducting a hearing, the trial court granted Henry’s motion and entered an order re-sentencing Henry on the sexual battery counts to thirty years on each count concurrent to each other, but consecutive to the remaining counts. Thus, Henry was sentenced to a total of ninety years in prison. In all other respects, the sentencing remained the same.
 

 In this appeal, Henry contends that his current sentence constitutes a
 
 defacto
 
 sentence of life without the possibility of parole and that such a sentence meets the test of cruel and unusual punishment under
 
 Graham.
 
 Although the time that Henry is to serve can be shortened through incentive and meritorious gain-time, under Florida law, he must serve eighty-five percent; therefore, Henry should serve at least 76.5 years.
 
 [1]
 
 Henry has filed a National Vital Statistics Report as supplemental authority, suggesting that his life expectancy at birth by race and sex is 64.3 years. Henry argues that because he is going to have to serve more years in prison than, statistically, he is expected to live, his sentence is an unconstitutional
 
 de facto
 
 life sentence.
 

 In
 
 Graham,
 
 the United States Supreme Court addressed the issue of “whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime.” 130 S.Ct. at 2017-18. The State of Florida imposed such a sentence, and the defendant “ehal-lenge[d] the sentence under the Eighth Amendment’s Cruel and Unusual Punishments Clause, made applicable to the States by the Due Process Clause of the Fourteenth Amendment.”
 
 Id.
 
 at 2018. After the defendant was found to have “violated his probation by committing a home invasion robbery, by possessing a firearm, and by associating with persons engaged in criminal activity,” he was adjudicated guilty of the earlier charges of armed burglary and attempted armed robbery for which he had been serving probation.
 
 Id.
 
 at 2019-20. The trial court “sentenced him to the maximum sentence authorized by law on each charge: life imprisonment for the armed burglary and 15 years for the attempted armed robbery.”
 
 Id.
 
 at 2020. Importantly, “[bjecause Florida ... abolished its parole system,
 
 see
 
 Fla. Stat. § 921.002(l)(e) (2003), a life sentence gives a defendant no possibility of release unless he is granted executive clemency.”
 
 Id.
 

 The Supreme Court found:
 

 The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic op
 
 *1087
 
 portunity to obtain release before the end of that term.
 

 Id.
 
 at 2034. With respect to the defendant, the Court said:
 

 Terrance Graham’s sentence guarantees he will die in prison without any meaningful opportunity to obtain release, no matter what he might do to demonstrate that the bad acts he committed as a teenager are not representative of his true character, even if he spends the next half century attempting to atone for his crimes and learn from his mistakes. The State has denied him any chance to later demonstrate that he is fit to rejoin society based solely on a non-homicide crime that he committed while he was a child in the eyes of the law. This the Eighth Amendment does not permit.
 

 Id.
 
 at 2033. The Court noted “the global consensus against the sentencing practice in question.”
 
 Id.
 
 It also noted that it “has recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers.”
 
 Id.
 
 at 2027. The Court observed that “[ljife without parole is an especially harsh punishment for a juvenile,” explaining:
 

 Under this sentence a juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender. A 16-year-old and a 75-year-old each sentenced to life without parole receive the same punishment in name only.
 
 See
 
 Roper,[
 
 2
 
 ]
 
 supra,
 
 at 572, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1;
 
 cf. Harmelin,
 

 [3]
 

 supra,
 
 at 996, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (“In some cases ... there will be negligible difference between life without parole and other sentences of imprisonment — for example, ... a lengthy term sentence without eligibility for parole, given to a 65-year-old man”). This reality cannot be ignored.
 

 Id.
 
 at 2028.
 

 In his dissenting opinion, Justice Thomas discussed the evidence of the frequency of the sentencing practice at issue.
 
 Id.
 
 at 2052 (Thomas, J., joined by Scalia, J., and joined in Parts I and III by Alito, J., dissenting). He noted: “[I]t seems odd that the Court counts only those juveniles sentenced to life without parole and excludes from its analysis all juveniles sentenced to lengthy term-of-yeárs sentences (e.g., 70 or 80 years’ imprisonment),” and asserted: “It is difficult to argue that a judge or jury imposing such a long sentence — which effectively denies the offender any material opportunity for parole— would express moral outrage at a life-without-parole sentence.” Id. at 2052 n. 11. Justice Alito, in-his dissenting.opinion, pointed out that “[njothing in the Court’s opinion affects the imposition of a sentence to a term of years without the possibility of parole,” and that “[ijndeed, petitioner conceded at oral argument that a sentence of as much as 40 years without the possibility of parole ‘probably
 
 [1]
 
 would be constitutional.”
 
 Id.
 
 at 2058 (Alito, J., dissenting).
 

 The facts here are different from those in
 
 Graham.
 
 Here, unlike the defendant in Graham, Henry did not (in the end) receive a life sentence without parole for a nonhomicide offense; he received a lengthy aggregate term-of-years sentence without the possibility of parole for multiple nonhomicide offenses. This precise issue has not yet been addressed by a Florida court, although, very recently in two cases, the First District Court of Appeal
 
 *1088
 
 did address the issue of a lengthy term-of-years sentence imposed on a juvenile in
 
 Gridine v. State,
 
 — So.3d-, 2011 WL 6849649 (Fla. 1st DCA 2011) and
 
 Thomas v. State,
 
 78 So.3d 644 (Fla. 1st DCA 2011). In
 
 Gridine,
 
 the sentence at issue was seventy years for attempted first degree murder, and in
 
 Thomas,
 
 the sentences were concurrent fifty years for armed robbery and aggravated battery. In neither did the First District find a constitutional violation based on
 
 Graham. See also Manuel v. State,
 
 48 So.3d 94, 98 n. 3 (Fla. 2d DCA 2010).
 

 Courts in other jurisdictions that have considered this issue have arrived at inconsistent conclusions. California has seen a significant split among its intermediate appellate courts on the application of
 
 Graham
 
 to lengthy term-of-years sentences.
 

 In
 
 People v. Mendez,
 
 188 Cal.App.4th 47, 114 Cal.Rptr.3d 870, 873 (Cal.App. 2010), Division 2 of California’s Second District Court of Appeal, applied the holding in
 
 Graham
 
 to a lengthy term-of-years sentence that it characterized as a
 
 de facto
 
 life sentence without the possibility of parole. Months later in
 
 People v. Caballero,
 
 191 Cal.App.4th 1248, 119 Cal.Rptr.3d 920, 926 (Cal.App.2011), Division 4 of California’s Second District Court of Appeal, disagreed with the holding in
 
 Mendez,
 
 stating that it “declinefd] to follow
 
 Mendez’s
 
 holding that the principles stated in
 
 Graham
 
 bar a court from sentencing a juvenile offender to a term-of-years sentence that exceeds his or her life expectancy.” Thereafter, in
 
 People v. Ramirez,
 
 193 Cal. App.4th 613, 123 Cal.Rptr.3d 155, 165 (Cal. App.2011), Division 4 of California’s Second District Court of Appeal, adhered to the view in
 
 Caballero.
 
 However, in
 
 People v. J.I.A.,
 
 196 Cal.App.4th 393, 127 Cal. Rptr.3d 141, 149 (Cal.App.2011), Division 3 of California’s Fourth District Court of Appeal, declined to follow
 
 Caballero,
 
 concluding that the defendant’s sentence was cruel and unusual punishment under
 
 Graham
 
 and
 
 Mendez
 
 where: “[ajlthough [the defendant’s] sentence [was] not technically an LWOP [“life without parole”] sentence, it [was] a de facto LWOP sentence because he [was] not
 
 eligible
 
 for parole until about the time he [was] expected to die.” Again, in
 
 People v. De Jesus Nunez,
 
 195 Cal. App.4th 414, 125 Cal.Rptr.3d 616, 618 (Cal.App.2011), Division 3 of California’s Fourth District Court of Appeal, agreed with
 
 Mendez
 
 and disagreed with
 
 Ramirez,
 
 stating that it “perceive[d] no sound basis to distinguish
 
 Graham’s
 
 reasoning where a term of years beyond the juvenile’s life expectancy is tantamount to an LWOP term.” The California Supreme Court recently granted review of these decisions.
 
 See People v. Caballero,
 
 123 Cal.Rptr.3d 575, 250 P.3d 179 (2011),
 
 People v. Ramirez,
 
 128 Cal.Rptr.3d 271, 255 P.3d 948 (2011), and
 
 People v. Nunez,
 
 128 Cal. Rptr.3d 274, 255 P.3d 951 (2011).
 

 Unlike California, Georgia courts are, so far, consistent in their view that
 
 Graham
 
 is not implicated in a term-of-years sentence.
 
 See Adams v. State,
 
 288 Ga. 695, 707 S.E.2d 359 (2011) (holding that sentence of mandatory twenty-five years followed by life on probation for aggravated molestation of a four-year-old child does not implicate categorical Eighth Amendment restriction under
 
 Graham,
 
 nor is it grossly disproportionate for particular crime);
 
 Middleton v. State,
 
 313 Ga.App. 193, 721 S.E.2d 111 (Ga.Ct.App.2011) (determining that aggregate sentence of thirty years without parole for armed robbery, two counts of aggravated assault, kidnapping and theft after sexual assault of a fifty-four-year-old woman and theft of her car and purse did not implicate
 
 Graham
 
 because the defendant received a term-of-years sentence).
 

 
 *1089
 
 The Arizona Court of Appeals also recently considered the application of
 
 Graham
 
 in a case involving convictions of six counts of arson of an occupied structure, one count of attempted arson, fifteen counts of endangerment, seven counts of criminal damage and two counts of arson of property, which, with a combination of enhanced and consecutive sentences, totaled an aggregate of 139.75 years.
 
 State v. Kasic,
 
 265 P.3d 410 (Ariz.Ct.App.2011). The court rejected the “de facto life sentence” argument, saying that the
 
 Graham
 
 decision made clear that it applied only to juvenile offenders sentenced to life without parole for non-homicide offenses. The court also pointed out that Kasic was convicted of thirty-two felonies and the longest sentence Kasic received for any one offense was 15.75 years.
 

 If we conclude that
 
 Graham
 
 does not apply to aggregate term-of-years sentences, our path is clear. If, on the other hand, under the notion that a term-of-years sentence can be a
 
 de facto
 
 life sentence that violates the limitations of the Eighth Amendment,
 
 Graham
 
 offers no direction whatsoever.
 
 [4]
 
 At what number of years would the Eighth Amendment become implicated in the sentencing of a juvenile: twenty, thirty, forty, fifty, some lesser or greater number? Would gain time be taken into account? Could the number vary from offender to offender based on race, gender, socioeconomic class or other criteria? Does the number of crimes matter? There is language in the
 
 Graham
 
 majority opinion that suggests that no matter the number of offenses or victims or type of crime, a juvenile may not receive a sentence that will cause him to spend his entire life incarcerated without a chance for rehabilitation, in which case it would make no logical difference whether the sentence is “life” or 107 years.
 
 [5]
 
 Without any tools to work with, however, we can only apply
 
 Graham
 
 as it is written. If the Supreme Court has more in mind, it will have to say what that is. We conclude that Henry’s aggregate term-of-years sentence is not invalid under the Eighth Amendment and affirm the decision below.
 

 AFFIRMED.
 

 ORFINGER, C.J., and PALMER, J., concur.
 

 [1]
 

 . Section 921.002(l)(e), Florida Statutes, provides:
 

 The sentence imposed by the sentencing judge reflects the length of actual time to be served, shortened only by the application of incentive and meritorious gain-time as provided by law, and may not be shortened if the defendant would consequently serve less than 85 percent of his or her term of imprisonment as provided in s. 944.275(4)(b) 3. The provisions of chapter 947, relating to parole, shall not apply to persons sentenced under the Criminal Punishment Code.
 

 [2]
 

 .
 
 Roper v. Simmons,
 
 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).
 

 [3]
 

 .
 
 Harmelin v. Michigan,
 
 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).
 

 [4]
 

 . One of the underlying premises of
 
 Graham,
 
 that juveniles, as a class, spend more time incarcerated than do adults because "life” for a juvenile is longer than "life” for an adult, breaks down when term-of-years sentences come into play.
 

 [5]
 

 .
 
 But see U.S. v. Mathurin,
 
 2011 WL 2580775 (S.D.Fla. June 29, 2011).