**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROOSEVELT BRIAN MOORE, *Petitioner-Appellant*, <br><br> v. <br><br> M. D. BITER, Warden, *Respondent-Appellee*. | No. 11-56846 <br><br> D.C. No. 2:11-cv-04256-JAK-FFM <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Argued and Submitted
February 6, 2013—Pasadena, California

Filed August 7, 2013

Before: Harry Pregerson, William A. Fletcher, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Pregerson

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging a 254-year sentence for a juvenile nonhomicide offender.

The panel first held that *Graham v. Florida*, 130 S. Ct. 2011 (2010), which prohibits the punishment of life without possibility of parole for juvenile nonhomicide offenders like petitioner, applies retroactively on collateral review. The panel then held that the state court's failure to apply *Graham* to petitioner's sentence was contrary to clearly established federal law.

## COUNSEL

Patricia A. Young (argued), Deputy Federal Public Defender; Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for Petitioner-Appellant.

Mary Sanchez (argued), Deputy Attorney General; Kenneth C. Byrne, Supervising Deputy Attorney General; Lance E. Winters, Senior Assistant Attorney General; Dane R. Gillette, Chief Assistant Attorney General; Kamala D. Harris, Attorney General of California, Los Angeles, California, for Respondent-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

PREGERSON, Circuit Judge:

In *Graham v. Florida*, 130 S. Ct. 2011 (2010), the United States Supreme Court clearly established that the Eighth Amendment prohibits the punishment of life without parole for juvenile nonhomicide offenders. As compared to adults, juvenile nonhomicide offenders are still developing their characters, have diminished moral culpability, and possess greater capacity to change. *Id.* at 2026–27. The Constitution requires the State to give juvenile nonhomicide offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 2030.

In 1991, Roosevelt Brian Moore received a term-of-years sentence of 254 years and four months for nonhomicide crimes he committed when he was sixteen years old. The earliest Moore could be considered for parole is after serving 127 years and two months. Because Moore would have to live to be 144 years old to be eligible for parole, his chance for parole is zero. Moore filed state habeas petitions and a federal habeas petition challenging his sentence under *Graham*. All petitions were denied.

We have jurisdiction over Moore's appeal pursuant to 28 U.S.C. §§ 1291 and 2253. The facts in *Graham* are materially indistinguishable from the facts in Moore's case. Accordingly, the state court's failure to apply *Graham* was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We thus REVERSE the district court's denial of Moore's habeas petition and REMAND to

the district court with instructions to grant Moore's habeas petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

A jury convicted Moore of sexually victimizing four separate women on four occasions during a five-week period in February and March 1991. At the time the crimes were committed, Moore was sixteen years old. Moore did not have a prior criminal record, but was tried and sentenced as an adult.

A jury found Moore guilty of a total of twenty-four counts: nine counts of forcible rape, seven counts of forcible oral copulation, two counts of attempted second degree robbery, two counts of second degree robbery, forcible sodomy, kidnaping with the specific intent to commit a felony sex offense, genital penetration by a foreign object, and the unlawful driving or taking of a vehicle. The jury found that Moore also used a firearm while committing his crimes.

Before the sentencing hearing, the California Department of the Youth Authority submitted a psychological report to the trial court regarding Moore's capacity to change. One staff psychologist, Dr. Mahoney, found that "there is no reason to believe that [Moore] would not continue to be dangerous well into the future." The rest of the clinical staff, however, concluded that: "[Moore] does not appear to be fixed in his antisocial value system as he displays a sense of motivation to change in overcoming his delinquent lifestyle." A casework specialist found that Moore was "severely depressed with a history of impulsivity and some immaturity" and has "expressed a willingness to change." The clinical

team's "impression [was that Moore] has the mental and physical capacity to benefit from rehabilitation."

At the sentencing hearing, the trial court agreed with the "minority opinion of [Dr.] Mahoney." The trial court sentenced Moore to consecutive sentences totaling 254 years and four months. Moore is not eligible for parole until he serves half of his sentence, 127 years and two months. Cal. Penal Code § 2933(a) (1991). Thus, Moore will spend his life in prison because he would have to live to be 144 years old to be eligible for parole.

## POST-CONVICTION PROCEEDINGS

Moore appealed his sentence to the California Court of Appeal, which affirmed his sentence in an unpublished disposition on May 27, 1993. Moore did not appeal to the California Supreme Court.

The United States Supreme Court decided *Graham v. Florida* on May 17, 2010, and modified its opinion on July 6, 2010. 130 S. Ct. 2011 (2010). Moore filed *pro se* state habeas petitions in the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court, arguing that his sentence was unconstitutional under *Graham*. The Los Angeles County Superior Court summarily denied Moore's petition. The California Court of Appeal held that *Graham* does not apply to Moore's sentence. The California Supreme Court summarily denied review.

On May 10, 2011, Moore filed a timely federal habeas petition. The district court summarily dismissed Moore's federal petition on the ground that Moore had not exhausted

his available state remedies.    Judgment was entered, dismissing Moore's petition without prejudice.

On July 14, 2011, Moore filed *pro se* an application to clarify the district court's order and judgment.  He provided documents that demonstrated he had exhausted his state remedies.  The magistrate judge treated Moore's application as a motion to alter or amend judgment under Rule 59(e) or a motion for relief from judgment under Rule 60(b)(6).  The magistrate judge denied the motion because he believed that *Graham* was not retroactive on collateral review.    Over Moore's objection, the district court adopted the magistrate judge's report and recommendation in its entirety.

Moore timely filed a notice of appeal and applied for a certificate of appealability.  Moore's appeal involves two certified issues: (1) whether *Graham* applies retroactively on collateral review; and (2) whether the state court's failure to apply *Graham* to Moore's sentence was contrary to clearly established federal law.

**STANDARD OF REVIEW**

We review a district court's denial of a petition for writ of habeas corpus *de novo*.  *Lopez v. Thompson*, 202 F.3d 1110, 1116 (9th Cir. 2000) (en banc).  Because Moore filed his federal habeas petition after 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies to his petition. *Milke v. Ryan*, 711 F.3d 998, 1003 (9th Cir. 2013). Under AEDPA, a federal court cannot grant habeas relief based on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This appeal concerns the first basis for habeas relief. Under § 2254(d)(1), a petitioner may meet his burden in one of two ways. "A state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). "A state-court decision involves an unreasonable application of [the Supreme Court's] clearly established precedents if the state court applies [the Court's] precedents to the facts in an objectively unreasonable manner." *Id.* Accordingly, although AEDPA "require[s] federal courts to treat the decisions of the state court with deference[,] . . . when state courts interpret federal law incorrectly, or fail to apply it all, a federal court may intervene." *Milke*, 711 F.3d at 1003.

## DISCUSSION

### A. *Graham*'s Prohibition on Life Without Parole for Juvenile Nonhomicide Offenders

In *Graham*, the Supreme Court held that the Constitution prohibits States from sentencing "a juvenile offender . . . to life in prison without parole for a nonhomicide crime." *Graham v. Florida*, 130 S. Ct. 2011, 2017–18 (2010). Such a sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment:

> Terrance Graham's sentence guarantees he
> will die in prison without any meaningful
> opportunity to obtain release, no matter what
> he might do to demonstrate that the bad acts
> he committed as a teenager are not
> representative of his true character, even if he
> spends the next half century attempting to
> atone for his crimes and learn from his
> mistakes. The State has denied him any
> chance to later demonstrate that he is fit to
> rejoin society based solely on a nonhomicide
> crime that he committed while he was a child
> in the eyes of the law. This the Eighth
> Amendment does not permit.

*Id.* at 2033.

Graham's sentence of life without possibility of parole
was the culmination of a series of crimes that Graham
committed between the ages of sixteen to seventeen. In 2003,
Graham pleaded guilty to armed burglary and attempted
armed robbery. *Id.* at 2018. Under the plea agreement, the
trial court withheld adjudication of guilt and sentenced
Graham to probation. *Id.* While on probation, Graham
allegedly robbed a home, held a victim at gunpoint, attempted
a second robbery, and led police on a high speed chase. *Id.*
at 2018–19.

The trial court revoked Graham's probation, found
Graham guilty of the 2003 charges, and sentenced him to the
maximum sentence on each charge: life imprisonment for the
armed burglary and fifteen years for the attempted armed
robbery. *Id.* at 2019–20. In effect, Graham had a sentence of
life without possibility of parole. *Id.* at 2020 ("Because

Florida has abolished its parole system, . . . a life sentence [gave Graham] no possibility of release unless he is granted executive clemency." (citing Fla. Stat. § 921.002(1)(e) (2003)).

*Graham* broke new ground because the Supreme Court applied a categorical classification to a term-of-years sentence for the first time. *Id.* at 2022. The Supreme Court uses two classifications to determine whether a sentence is so disproportional to the crime that it amounts to cruel and unusual punishment. *Id.* at 2021. The first classification "involves challenges to the length of term-of-years sentences," where the court considers "all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Id.* The second classification "use[s] categorical rules to define Eighth Amendment standards." *Id.* at 2022. All prior cases under the categorical approach involved the death penalty. *Id.* For example, the Court prohibited capital punishment: (1) for nonhomicide crimes against individuals, *e.g.*, *Kennedy v. Louisiana*, 554 U.S. 407, 421 (2008); (2) for defendants who committed their crimes before the age of eighteen, *Roper v. Simmons*, 543 U.S. 551, 575 (2005); and (3) for defendants with low range intellectual functioning, *Atkins v. Virginia*, 536 U.S. 304, 321 (2002).

The Court explained that *Graham* "involves an issue the Court has not considered previously: *a categorical challenge to a term-of-years sentence*." *Graham*, 130 S. Ct. at 2022 (emphasis added). The Court rejected using the first classification which requires a case-by-case inquiry because Graham's case "implicates a particular type of sentence as it applies to an entire class of offenders who have committed a range of crimes." *Id*. at 2022–23. Thus, the Court held "the

appropriate analysis" is the second classification that uses "categorical rules." *Id.*

Under the categorical approach, the Court first determined that a national consensus has developed against sentencing juvenile nonhomicide offenders to life without parole. *Id.* at 2023–26. Although thirty-seven States, the District of Columbia, and Federal law permitted sentences of life without parole for juvenile nonhomicide offenders, the actual sentencing practice was rare. *Id.* at 2023.

The Court then determined that in its "independent judgment" life without parole for nonhomicide juvenile offenders constitutes cruel and unusual punishment. *Id.* at 2026–30. The Court premised its conclusion on four primary considerations. First, the Court considered juvenile offenders' distinctive characteristics and traits. The Court cited to the extensive psychological data that it relied on in *Roper*, 543 U.S. at 569–75, which "established that because juveniles have lessened culpability they are less deserving of the most severe punishments." *Graham*, 130 S. Ct. at 2026. It reasoned that since *Roper*, developments in psychology and brain science continue to reveal "fundamental differences between juvenile and adult minds." *Id.*

Specifically, the Court emphasized that juveniles lack the maturity and sense of responsibility possessed by adults, are "'more vulnerable or susceptible to negative influences and outside pressures,'" are more capable of change than adults, and are still developing their moral characters. *Id.* at 2026–27 (quoting *Roper*, 543 U.S. at 569). Given these traits, the Court concluded that "'[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character

deficiencies will be reformed.'" *Id.* (quoting *Roper*, 543 U.S. at 570). Further, these characteristics mean juveniles cannot reliably be sorted into those who are capable of reform and those who are not. *Id.* at 2026. "'[I]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Id.* (quoting *Roper*, 543 U.S. at 573).

Second, the Court considered the nature of nonhomicide offenses. The Court determined that nonhomicide crimes "cannot be compared to murder in their severity and irrevocability." *Id.* at 2027 (internal quotation marks and citation omitted). The Court concluded that compared to an adult murderer, a juvenile nonhomicide offender "has a twice diminished moral culpability." *Id.*

Third, the Court considered the consequences of life in prison without parole. The Court emphasized that it "has recognized the severity of sentences that deny convicts the possibility of parole." *Id.* The harshness of the punishment, it reasoned, is exacerbated for juveniles because a "juvenile offender will on average serve more years and a greater percentage of his life in prison than an adult offender." *Id.* at 2028. For a juvenile offender, life without parole "means denial of hope" because "good behavior and character improvement are immaterial." *Id.* at 2027 (quoting *Naovarath v. State*, 105 Nev. 525, 526, 779 P.2d 944 (1989)).

Finally, the Court concluded that penological goals do not justify life without parole for juvenile nonhomicide offenders because: (1) retribution is not served by imposing life without parole on juveniles; (2) juveniles are less susceptible to

deterrence; (3) incapacitation for life denies juveniles a "chance to demonstrate growth and maturity"; and (4) rehabilitation cannot be served without parole because it denies juveniles "the right to reenter the community." *Id.* at 2028–30.

The Court thus held that the Eighth Amendment requires that States "give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 2030. In other words, the Eighth Amendment "forbid[s] States from making the judgment at the outset that those offenders never will be fit to reenter society." *Id.*

## B. *Graham* Applies Retroactively on Collateral Review.

Both parties agree that *Graham* established a new rule of law that is retroactively applicable on collateral review under *Teague v. Lane*, 489 U.S. 288, 310 (1989).

When the Supreme Court establishes a new rule, "that rule applies to all criminal cases still pending on direct review" and applies "to convictions that are already final . . . only in limited circumstances." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004). Under *Teague*, a new rule applies retroactively where it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." 489 U.S. at 311 (internal quotation marks and citation omitted). The Supreme Court has explained that this exception "should be understood to cover . . . rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989), *abrogated on other grounds by Atkins*, 536 U.S. 304.

*Graham* meets this test. It applies to a class of defendants, juvenile nonhomicide offenders, defined by: (1) the status of the defendants (juveniles); and (2) the type of offense (nonhomicide crimes). *Graham* prohibits the punishment of life without parole to this class of defendants. Thus, we hold that *Graham* is retroactive under *Teague*. In so holding, we join the Fifth Circuit, which previously held that "*Graham* has been made retroactive to cases on collateral review by the Supreme Court." *In re Sparks*, 657 F.3d 258, 260 (5th Cir. 2011) (internal quotation marks omitted).[1]

We therefore conclude that although Moore's conviction became final in 1993,[2] he may challenge his sentence under *Graham* because *Graham* established a new rule of law that is retroactive on collateral review.

## C. The State Court's Decision Was Contrary to Clearly Established Federal Law.

"In examining the reasonableness of the state courts' decisions, we look to 'the last explained state-court judgment'

---

[1] The Eleventh Circuit has also suggested that *Graham* is retroactive under *Teague*. *See In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013) (holding that juvenile nonhomicide offender "made a *prima facie* showing that *Graham* has been made retroactively applicable by the Supreme Court to cases on collateral review"); *Loggins v. Thomas*, 654 F.3d 1204, 1221 (11th Cir. 2011) (noting that *Graham* fits the *Teague* exception of new rules that prohibit a category of punishment for defendants because of their status or offense).

[2] "State convictions are final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Beard v. Banks*, 542 U.S. 406, 411 (2004) (internal quotation marks and citations omitted).

on [the] claim." *Milke*, 711 F.3d at 1005 (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)); *see, e.g.*, *Avila v. Galaza*, 297 F.3d 911, 918 n.6 (9th Cir. 2002) (examining a referee's report denying habeas petition because it was the last reasoned decision of the state court). In this case, the state's last reasoned decision is the California Court of Appeal's decision denying Moore's state habeas petition.

The Supreme Court was unequivocal that for juvenile nonhomicide offenders, *Graham* established a "flat ban on life without parole." *Miller v. Alabama*, 132 S. Ct. 2455, 2465 (2012). *Graham* is controlling Supreme Court precedent that existed at the time of the Court of Appeal's decision. "[A] state court decision that fails to apply the correct controlling authority is 'contrary to . . . established Federal law' . . . ." *Milke*, 711 F.3d at 1003 (quoting *Benn v. Lambert*, 283 F.3d 1040, 1051 (9th Cir. 2002)). The California Court of Appeal incorrectly held that *Graham* "does not apply" to Moore's case because: (1) Moore had a "term-of-years sentence" for multiple crimes; and (2) Moore's sentence was for "violent rapes and forced copulation and sodomy perpetrated with a firearm." We address each below.

### 1. Moore's sentence is materially indistinguishable from the sentence in *Graham*.

The California Court of Appeal's failure to apply *Graham* on the ground that Moore has a term-of-years sentence for multiple crimes was contrary to *Graham* because "there are no constitutionally significant distinguishable facts" between Graham's and Moore's sentences. *Cudjo v. Ayers*, 698 F.3d 752, 763 (9th Cir. 2012).

In *Graham*, the Supreme Court held that life without parole was unconstitutional for a juvenile nonhomicide offender because that sentence means that a juvenile is incapable of returning to society:

> Life in prison without the possibility of parole gives no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope. Maturity can lead to that considered reflection which is the foundation for remorse, renewal, and rehabilitation. A young person who knows that he or she has no chance to leave prison before life's end has little incentive to become a responsible individual.

*Graham*, 130 S. Ct. at 2032.

Moore's sentence of 254 years is materially indistinguishable from a life sentence without parole because Moore will not be eligible for parole within his lifetime. Moore's sentence determines "at the outset that [Moore] never will be fit to reenter society." *Id.* at 2030. His sentence results in the same consequences as Graham's sentence. Moore must live the remainder of his life in prison, knowing that he is guaranteed to die in prison regardless of his remorse, reflection, or growth.

Contrary to the California Court of Appeal's analysis, *Graham*'s focus was not on the label of a "life sentence"—but rather on the difference between life in prison with, or without, possibility of parole. The Supreme Court explained that in the past, it had distinguished between a life sentence where a defendant "could hardly ignore the

possibility that he will not actually be imprisoned for the rest of his life" and a life sentence that "did not give the defendant the possibility of parole." *Id.* at 2027–28 (internal quotation marks and citations omitted). The Supreme Court emphasized that "[l]ife without parole is an especially harsh punishment for a juvenile." *Id.* at 2028. The "reality cannot be ignored" that "[a] 16-year-old and a 75-year-old each sentenced to life without parole receive the same punishment in name only." *Id.*

*Graham* recognized that "'[i]n some cases . . . there will be negligible difference between life without parole and other sentences of imprisonment." *Id*. (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996 (1991)). Here, we cannot ignore the reality that a seventeen year-old sentenced to life without parole and a seventeen year-old sentenced to 254 years with no possibility of parole, have effectively received the same sentence. Both sentences deny the juvenile the chance to return to society.[3] *Graham* thus applies to both sentences. *See Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied." (internal quotation marks and citation omitted)).

---

[3] Moreover, *Graham* involved a de facto life sentence without parole. Graham received a sentence of "life imprisonment." *Id*. at 2020. Because Florida had eliminated its parole system by statute, this amounted to a de facto life sentence without parole. *Id*. Graham's sentence was also the result of repeated criminal activity, not a single crime. It was only after Graham "violated his probation by committing a home invasion robbery, by possessing a firearm, and by associating with persons engaged in criminal activity" that he received a life sentence. *Id*. at 2019.

## 2. Moore's nonhomicide crimes are materially indistinguishable from the nonhomicide crimes in *Graham*.

The California Court of Appeal incorrectly concluded that *Graham* is inapplicable because Moore committed violent rapes, forced copulation, and sodomy perpetrated with a firearm. Importantly, in crafting its categorical bar, *Graham* drew only one line that was crime-specific: it distinguished between homicide and nonhomicide crimes. The Supreme Court explained that the "line between homicide and other serious violent offenses" is justified because "[l]ife is over for the victim of the murderer, but for the victim of even a very serious nonhomicide crime, life . . . is not over and normally is not beyond repair." *Graham*, 130 S. Ct. at 2027 (internal quotation marks and citations omitted). The Court refused to treat serious nonhomicide crimes such as rape the same as homicide. It emphasized that "[a]lthough an offense like robbery or rape is 'a serious crime deserving serious punishment,' those crimes differ from homicide crimes in a moral sense." *Id*. (quoting *Enmund v. Florida*, 458 U.S. 782, 797 (1982)).

Further, *Graham* expressly rejected a case-by-case approach that "would allow courts to account for factual differences between cases and to impose life without parole sentences for particularly heinous crimes." *Id.* at 2031. Instead, the Supreme Court chose a categorical approach, i.e., a flat-out rule that "*gives all juvenile nonhomicide offenders* a chance to demonstrate maturity and reform." *Id.* at 2032 (emphasis added).

That *Graham*'s categorical bar did not contain an exemption for violent sexual nonhomicide crimes is also

evident from the sentencing statutes *Graham* struck down as unconstitutional as applied to juveniles. *See Graham*, 130 S. Ct. at Appendix I. Those statutes include Delaware's criminal statute that required mandatory life without possibility of parole for rape against three or more separate victims, and criminal statutes in the District of Columbia, Georgia, Michigan, Missouri, and North Dakota, and under Federal law that permitted life without possibility of parole for rapes under circumstances similar to Moore's crimes.[4]

Under *Graham*, juvenile nonhomicide offenders may not be sentenced to life without parole regardless of the underlying nonhomicide crime.

## D. Moore's *Graham* Claim on the Merits

Having established that the California Court of Appeal's decision was contrary to clearly established federal law, we

---

[4] *See* Del. Code Ann., Tit. 11 § 773(c)(3) (rape of three or more separate victims shall be sentenced to life imprisonment without parole); D.C. Code § 22-3020(a)(5) (sex offenses against two or more victims in the same proceedings may result in life imprisonment without possibility of release); Ga. Code § 16-6-1(b) (rape punishable by imprisonment of life without parole); Mich. Comp. Laws Ann. § 750.520b(1)(c)(e), (2)(a) (rape while armed with a weapon or involving commission of another felony is sexual conduct in the first degree which may be punishable by imprisonment for life); Mo. Rev. Stat. § 558.018(5)(3), (6) (forcible rape against more than one victim results in life imprisonment with discretionary parole); N.D. Cent. Code Ann. §§ 12.1-20-03(1)(a), 12.1-32-01(1) (rape compelled by force or threat of serious bodily injury may result in life imprisonment without parole); 18 U.S.C.A. § 2241(a)(1), (a)(2) (aggravated sexual abuse which includes causing person to engage in sexual act by threat of serious bodily injury results in imprisonment for "any term of years or life").

now make an independent evaluation of Moore's constitutional claim.[5] *Milke*, 711 F.3d at 1012–13.

*Graham* prohibits the State from "[deciding] at the outset that [a juvenile] never will be fit to reenter society." *Graham*, 130 S. Ct. at 2030. *Graham*'s categorical ban ensures that a juvenile nonhomicide offender will not receive life without parole based on the "subjective judgment by a judge or jury that the offender is irredeemably depraved," which fails to take into account all of the psychological limitations and vulnerabilities of juveniles. *Id.* at 2027–30, 2031.

Moore was sentenced to 254 years during a single sentencing proceeding in 1992. At sentencing, the trial judge expressly agreed with one staff psychologist who, contrary to the rest of the clinical psychological team, concluded that Moore lacked the capacity to change.

Moore's sentence guarantees that he will die in prison because the trial judge determined at the outset that Moore

---

[5] In August 2012, after Moore filed his federal habeas petition, the California Supreme Court decided *People v. Caballero*, 55 Cal. 4th 262 (2012). In *Caballero*, the California Supreme Court held that "a 110-year-to-life sentence imposed on a juvenile convicted of nonhomicide offenses contravenes *Graham*'s mandate against cruel and unusual punishment." *Id.* at 265. The State argues that we should send Moore back to state court to take advantage of *Caballero*. The Supreme Court has instructed, however, that when a habeas petitioner has exhausted his state remedies, he should not be required to return to state court in light of an intervening state court decision that would favorably resolve the petitioner's claim. *Roberts v. LaVallee*, 389 U.S. 40, 42–43 (1967); *Francisco v. Gathright*, 419 U.S. 59, 62–64 (1974); *see also Briggs v. Raines*, 652 F.2d 862, 864–65 (9th Cir. 1981).

could not rehabilitate.[6]   Moore has now spent over half of his life in prison.  Still, he has no hope of reentering society.   His past and future efforts to reform are immaterial. Moore's sentence is irreconcilable with *Graham*'s mandate that a juvenile nonhomicide offender must be provided "some  meaningful opportunity" to reenter society.  *Graham*, 130 S. Ct. at 2030.   Thus, Moore's sentence is unconstitutional under *Graham*.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's denial of Moore's habeas petition on the grounds that: (1) *Graham* is retroactive on collateral review; and (2) the state court's decision was contrary to the clearly established Federal law set forth in *Graham*.   We **REMAND** with instructions to grant Moore's petition.

---

[6] Moore's sentence is significantly different than the sentence addressed by the Sixth Circuit in *Bunch v. Smith*, 685 F.3d 546, 547 (6th Cir. 2012), *cert. denied*, *Bunch v. Bobby*, 133 S. Ct. 1996 (2013).  In *Bunch*, the Sixth Circuit held that the state court's upholding of an 89-year aggregate sentence that provided for some possibility of parole for a juvenile nonhomicide offender was not contrary to clearly established federal law assuming, without deciding, that law included *Graham*.  *Id*. at 550, 551 n.1.   The court reasoned that *Graham* "did not clearly establish that consecutive, fixed-term sentences for juveniles who commit multiple nonhomicide offenses are unconstitutional when they amount to the practical equivalent of life without parole."  *Id*. at 550.  We acknowledge that courts have inconsistently applied *Graham* to lengthy term-of-years sentences that provide some possibility of parole, but such a sentence is not before us.  *Compare Floyd v. State*, 87 So. 3d 45, 45–46 (Fla. Dist. Ct. App. 1st Dist. 2012) (holding a combined 80-year sentence for nonhomicide crimes was unconstitutional under *Graham*), *with Henry v. State*, 82 So. 3d 1084, 1085–86, 1089 (Fla. Dist. Ct. App. 5th Dist. 2012) (holding *Graham* did not apply to 90-year total sentence, where defendant would be required to serve "76.5 years").