**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROOSEVELT BRIAN MOORE, *Petitioner-Appellant*, <br><br> v. <br><br> M. D. BITER, Warden, *Respondent-Appellee.* | No. 11-56846 <br><br> D.C. No. 2:11-cv-04256-JAK-FFM <br><br> ORDER |

Filed February 12, 2014

Before: Harry Pregerson, William A. Fletcher, and
Jacqueline H. Nguyen, Circuit Judges.

Order;
Dissent by Judge O'Scannlain

**SUMMARY**[*]

**Habeas Corpus**

The panel denied a petition for panel rehearing, denied a petition for rehearing en banc on behalf of the court, and ordered that no further petitions shall be entertained in a case in which the panel reversed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition challenging a 254-year sentence for a juvenile nonhomicide offender.

Judge O'Scannlain dissented from the denial of rehearing en banc, joined by Judges Tallman, Bybee, Callahan, Bea, M. Smith, and Ikuta. Judge O'Scannlain wrote that because the panel's opinion—which held that *Graham v. Florida*, 130 S. Ct. 2011 (2010), applies retroactively on collateral review and that the state court's failure to apply *Graham* to petitioner's sentence was contrary to clearly established federal law—defies the Anti-Terrorism and Effective Death Penalty Act, creates a circuit split, and threatens frequent and unjustified intrusions into state sovereignty.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

The panel has voted to deny the petitions for rehearing and rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petitions for rehearing and rehearing en banc are **DENIED**. No further petitions will be entertained.

Judge O'Scannlain's dissent from denial of rehearing en banc is filed concurrently with this Order.

---

O'SCANNLAIN, Circuit Judge, joined by TALLMAN, BYBEE, CALLAHAN, BEA, M. SMITH, and IKUTA, Circuit Judges, dissenting from the denial of rehearing en banc:

Our Court defies AEDPA once again, this time by failing to distinguish one "life without parole" sentence from multiple "term-of-years" sentences. A panel of this Court holds that *Graham v. Florida*, 560 U.S. 48 (2010), invalidates the latter, ignoring the contrary holding of the Sixth Circuit,[1]

---

[1] *Compare Moore v. Biter*, 725 F.3d 1184, 1187 (9th Cir. 2013), *with Bunch v. Smith*, 685 F.3d 546, 551 (6th Cir. 2012), *cert. denied*, *Bunch v. Bobby*, 133 S. Ct. 1996 (2013).

disregarding the views of state courts across the country, and flouting *Graham*'s text and reasoning.

I respectfully dissent from our decision not to rehear this case en banc.

I

Roosevelt Moore appeals the district court's denial of his petition for habeas relief under 28 U.S.C. § 2254. Moore committed a series of forcible rapes and other offenses at the age of sixteen and was tried as an adult. In 1991, a jury convicted him of twenty-four crimes, including nine counts of forcible rape, seven counts of forcible oral copulation, and two counts of robbery, and also found that he used a firearm for most of the offenses. He was sentenced to fixed terms of imprisonment for each offense with enhancements for using a firearm, to run consecutively. Although none of the individual sentences exceeded eight years, Moore was sentenced to 254 years in prison, cumulatively. He cannot be considered for parole until he serves at least 127 years and two months.

Nearly two decades later, Moore filed state habeas petitions, *pro se*, arguing that his sentence is unconstitutional in light of *Graham*. The Los Angeles County Superior Court summarily denied his petition. The California Court of Appeal held that *Graham* does not apply to Moore's sentence, and the California Supreme Court summarily denied review.

Our panel, however, granted habeas relief, holding that *Graham* applies retroactively to Moore's sentence and that the California state courts' decisions were contrary to

*Graham* because Moore's case is materially indistinguishable from Graham's. *Moore*, 725 F.3d at 1186.

## II

Under AEDPA, federal courts may not grant habeas relief on a claim that was adjudicated on the merits in state court, unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [the Court's] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (internal quotation marks omitted).

A state court "must apply legal principles established by a Supreme Court decision when the case falls squarely within those principles, but not in cases where there is a structural difference between the prior precedent and the case at issue, or when the prior precedent requires tailoring or modification to apply to the new situation." *Moses v. Payne*, 555 F.3d 742, 753 (9th Cir. 2009) (quotation marks omitted). Unless the Supreme Court has "squarely address[ed]" an issue or established a principle that "clearly extend[s] to a new context," there is no "clearly established Supreme Court precedent addressing the issue." *Id.* at 754 (internal quotation marks omitted; second alteration in original).

The Court has consistently warned lower courts, and this court in particular, to avoid defining "clearly established" law too broadly. *See, e.g.*, *Parker v. Matthews*, 132 S. Ct. 2148 (2012); *Howes v. Fields*, 132 S. Ct. 1181 (2012); *Wright v. Van Patten*, 552 U.S. 120 (2008); *Carey v. Musladin*, 549 U.S. 70 (2006).

A

In *Graham*, the Supreme Court announced that the Constitution does not permit "a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime." 560 U.S. at 52–53. The Court's "categorical rule" was meant to give "juvenile nonhomicide offenders a chance to demonstrate maturity and reform." *Id.* at 79.

To support its conclusion that the state court's decision was contrary to *Graham*, the panel reasoned that "Moore's sentence of 254 years is materially indistinguishable from a life sentence without parole because Moore will not be eligible for parole within his lifetime." *Moore*, 725 F.3d at 1191. That Moore's sentence was not likely to be completed during his lifetime, even if not labeled a "life sentence," did not distinguish it from *Graham*. *Id.* at 1191–92. Furthermore, that Moore committed serious crimes did not distinguish his case from *Graham*, because the Supreme Court "expressly rejected a case-by-case approach" that would take account of factual differences between crimes. *Id.* at 1192–93.

And there the panel's opinion stops, failing to confront the most meaningful distinction between Moore's case and *Graham*: Moore's term of imprisonment is composed of over two dozen separate sentences, none longer than eight years;

Graham's is one sentence, "life without parole." Because the Supreme Court explicitly stated that *Graham* concerned "only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense," 560 U.S. at 62, it "did not clearly establish that consecutive, fixed-term sentences for juveniles who commit multiple nonhomicide offenses are unconstitutional when they amount to the practical equivalent of life without parole," *Bunch*, 685 F.3d at 550.

If that express limitation on *Graham*'s holding were not enough, *Graham*'s reasoning makes clear that the Supreme Court did not squarely address aggregate term-of-years sentences. Beginning with "objective indicia of national consensus," the Court noted that there were "123 juvenile nonhomicide offenders serving life without parole sentences," and "only 11 jurisdictions nationwide in fact impose life without parole sentences on juvenile nonhomicide offenders—and most of those do so quite rarely." *Graham*, 560 U.S. at 62–64. Thus, "[t]he sentencing practice now under consideration is exceedingly rare." *Id.* at 67.

But, to reach that conclusion, the Court did not consider the prevalence of sentences like Moore's—lengthy term-of-years sentences adding up to *de facto* life imprisonment. *See id.* at 113 n.11 (Thomas, J., dissenting) ("[T]he Court counts only those juveniles sentenced to life without parole and excludes from its analysis all juveniles sentenced to lengthy term-of-years sentences (*e.g.*, 70 or 80 years' imprisonment)."). Nor was Moore counted among those 123 juvenile nonhomicide offenders. *See* P. Annino et al., *Juvenile Life without Parole for Non–Homicide Offenses: Florida Compared to Nation* 14–15 (Sept. 14, 2009) (listing four such offenders incarcerated in California for crimes of kidnapping and/or robbery).

If the Court did not consider aggregate term-of-years sentences adding up *de facto* to life without parole, it cannot have squarely addressed their constitutionality. *See Graham*, 560 U.S. at 124 (Alito, J., dissenting) ("Nothing in the Court's opinion affects the imposition of a sentence to a term of years without the possibility of parole."). As our sister circuit held: The Supreme Court "did not analyze sentencing laws or actual sentencing practices regarding consecutive, fixed-term sentences for juvenile nonhomicide offenders. This demonstrates that the Court did not even consider the constitutionality of such sentences, let alone clearly establish that they can violate the Eighth Amendment's prohibition on cruel and unusual punishments." *Bunch*, 685 F.3d at 552.[2]

If the Court has not squarely addressed the constitutionality of aggregate term-of-years sentences, the state court's determination that Moore's sentence is not unconstitutional cannot be contrary to clearly established federal law.

B

Unsurprisingly, in the absence of an express holding regarding such sentences, "courts across the country are split over whether *Graham* bars a court from sentencing a juvenile nonhomicide offender to consecutive, fixed terms resulting in an aggregate sentence that exceeds the defendant's life expectancy." *Id.* Some have held that *Graham* prohibits

---

[2] The Court's analysis of objective indicia does not dictate its Eighth Amendment jurisprudence, of course. *See Graham*, 560 U.S. at 67. But we should not hold, and we should certainly not force state courts to assume, that the Court's "clearly established" holdings sweep well beyond such analysis.

aggregate term-of-years sentences that amount to the functional equivalent of life without parole. *See, e.g.*, *People v. Caballero*, 282 P.3d 291, 294–95 (Cal. 2012); *People v. Rainer*, No. 10CA2414, 2013 WL 1490107 (Colo. Ct. App. Apr. 11, 2013); *State v. Null*, 836 N.W.2d 41, 73 (Iowa 2013).[3] More have held that *Graham* does not prohibit aggregate term-of-years sentences such as Moore's. *See, e.g.*, *Bunch*, 685 F.3d at 552–53; *State v. Kasic*, 265 P.3d 410, 415–16 (Ariz. Ct. App. 2011); *Walle v. State*, 99 So. 3d 967, 971 (Fla. Ct. App. 2012); *Henry v. State*, 82 So. 3d 1084, 1089 (Fla. Ct. App. 2012); *State v. Brown*, 118 So. 3d 332, 341–42 (La. 2013); *State v. Merritt*, No. M2012-00829-CCA-R3CD, 2013 WL 6505145, at *5 (Tenn. Crim. App. Dec. 10, 2013).

To be sure, in many of the cases refusing to extend *Graham*, the sentence at issue left some possibility, however slight, that the prisoner might eventually be released. But nothing in their reasoning turned on such possibility. *See, e.g.*, *Brown*, 118 So. 3d at 341 ("[N]othing in *Graham* . . . applies to sentences for multiple convictions, as *Graham* conducted no analysis of sentences for multiple convictions and provides no guidance on how to handle such sentences.").

---

[3] None of those courts were required, as the panel was, to give deference under AEDPA to the contrary decision of a state court. Thus, none of them held, as the panel's opinion does, that the unconstitutionality of such sentences was "clearly established" by *Graham*. Moreover, even courts that have applied *Graham* to aggregate term-of-years sentences have recognized they are extending the case beyond its "clearly established" holding. *See Rainer*, 2013 WL 1490107, at *10; *Null*, 836 N.W.2d at 67; *see also Caballero*, 282 P.3d at 296 (Werdegar, J., concurring, joined by Liu, J.).

The existence of such a split is good evidence that the California courts' determination here—*Graham* does not apply to Moore's sentence—is not contrary to "clearly established" federal law. *Cf. Evenstad v. Carlson*, 470 F.3d 777, 783 (8th Cir. 2006) ("When the federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1)."); *Boyd v. Newland*, 467 F.3d 1139, 1152 (9th Cir. 2006) (holding that "in the face of [out-of-circuit] authority that is directly contrary" to our own interpretation of Supreme Court precedent, "and in the absence of explicit direction from the Supreme Court," we cannot hold that the state courts' analysis "was contrary to, or involved an unreasonable application of, Supreme Court precedent.").

Were the panel required to confront the constitutionality of Moore's sentence on direct review, or on collateral review of a federal sentence, picking one side of the dispute would have been necessary. But AEDPA precludes federal courts from settling such disputes on collateral review of a state sentence, at least without a persuasive explanation of how so many courts erred so obviously. The panel's opinion neither acknowledges the dispute nor explains how the panel divined a clearly established holding of the Supreme Court in the face of such widespread disagreement. Instead, it concedes a tangentially related split over how *Graham* applies "to lengthy term-of-years sentences that provide some possibility of parole." *Moore*, 725 F.3d at 1194 n.6.

C

An equally telling omission: the panel offers no justification for creating a circuit split, acting instead as though it has not done so. The only argument the opinion

provides for ignoring the Sixth Circuit's well-reasoned and thorough opinion is that the facts are different. *Id.* But any factual distinction—Bunch will be at least 95 years old when he is eligible for parole, *Bunch*, 685 F.3d at 551 n.1, whereas Moore will be at least 144—does not make a meaningful difference. Bunch, like Moore, will not be eligible for parole until well beyond his life expectancy.[4]

Moreover, nothing in the Sixth Circuit's opinion turns on the possibility that Bunch might outlive his sentence. Our sister circuit acknowledged that Bunch's sentence "may end up being the functional equivalent of life without parole." *Bunch*, 685 F.3d at 551. Such was the sentencing judge's goal: "I just have to make sure that you don't get out of the penitentiary. I've got to do everything I can to keep you there, because it would be a mistake to have you back in society." *Id.* at 548. Nonetheless, the court determined that Bunch's sentence was not contrary to clearly established federal law, because "in *Graham*, the Court said that a juvenile is entitled to . . . a 'realistic opportunity to obtain release' if a state imposes a sentence of 'life.'" *Id.* at 551 (quoting *Graham*, 560 U.S. at 82). "*Graham*'s holding" does not apply, therefore, "to a juvenile offender who received consecutive, fixed-term sentences." *Id.*; *see also id.* at 548 (The Supreme Court "did not address juvenile offenders, like Bunch, who received consecutive, fixed-term sentences for committing multiple nonhomicide offenses.").

The panel cannot evade the force of *Bunch*'s reasoning by noting an insignificant factual distinction, which our sister

---

[4] *See State v. Bunch*, No. 06 MA 106, 2007 WL 4696832, at *5 (Ohio Ct. App. Dec. 21, 2007) (Bunch "indicates, with citation to authorities, that his life expectancy is only 70 years.").

circuit assumed away. Yet the panel's opinion sets forth no other argument.

## III

Respect for the California courts, for our sister circuit, and for courts across the country that have declined to apply *Graham* to sentences such as Moore's should have compelled the panel to declare the reasons why it found their analysis unpersuasive. Instead, the panel's opinion ignores their arguments.

But the states encompassed by our Circuit cannot ignore the opinion's holding, which requires them to ask:

> At what number of years would the Eighth Amendment become implicated in the sentencing of a juvenile: twenty, thirty, forty, fifty, some lesser or greater number? Would gain time be taken into account? Could the number vary from offender to offender based on race, gender, socioeconomic class or other criteria? Does the number of crimes matter?

*Henry*, 82 So. 3d at 1089. Also, "What if the aggregate sentences are from different cases? From different circuits? From different jurisdictions? If from different jurisdictions, which jurisdiction must modify its sentence or sentences to avoid constitutional infirmity?" *Walle*, 99 So. 3d at 972.

Without authority to do so, the panel's opinion would force all the states in our Circuit to confront those questions; the opinion forbids them from "apply[ing] *Graham* as it is written," yet gives them no other "tools to work with," *Henry*,

82 So. 3d at 1089, when answering. And each of their answers could potentially be overruled by our Court as contrary to the "clearly established" rule of *Graham*.

IV

As the Supreme Court has reminded us yet again, "AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). We should never "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy." *Id.* (alteration in original) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). The panel has apparently concluded, without explanation, that not only the California court, but also the Sixth Circuit and courts across the country have experienced such an extreme malfunction. This "judicial disregard for the sound and established principles" that govern issuance of the writ of habeas corpus threatens to undermine "confidence in the writ and the law it vindicates." *Richter*, 131 S. Ct. at 780.

Because the panel's opinion defies AEDPA, creates a circuit split, and threatens frequent and unjustified intrusions into state sovereignty, I respectfully dissent from our Court's regrettable failure to rehear this case en banc.